UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON
CRIMINAL ACTION NO. 07-153-JMH-JGW
CIVIL ACTION NO. 09-7071-JMH-JGW

UNITED STATES OF AMERICA                                           PLAINTIFF

V.

ENRIQUE ROSALES-AREVALO,                             DEFENDANT

## REPORT & RECOMMENDATION

On March 23, 2009, defendant Enrique Rosales-Arevalo, proceeding *pro se*, filed a motion seeking to vacate and set aside his sentence pursuant to 28 U.S.C. § 2255, *see* Doc. 55, together with a supplemental motion, s*ee* Doc 57. The United States has filed a response, Doc. 60, to which defendant has filed a reply. Doc. 61. On April 2, 2010, the motion to vacate was reassigned to the undersigned magistrate judge for initial consideration and a report and recommendation. 28 U.S.C. § 636(b). I now recommend the denial of defendant's motion.

**I. Background**

Pursuant to a written plea agreement, defendant Rosales-Arevalo entered a guilty plea on December 27, 2007 to a single count of violating 21 U.S.C. §846, conspiracy to distribute 500 grams or more of cocaine, in exchange for dismissal of additional charges against him. On March 24, 2008, defendant was sentenced to a term of imprisonment of 60 months, to be followed by four years of supervised release. Defendant did not appeal, but instead filed the instant motion to vacate defendant's conviction and sentence on March 23, 2009. In his §2255 motion, defendant argues that he received ineffective assistance of counsel in violation of the

Sixth Amendment, due to his attorney's failure to file a direct appeal or *Anders* brief. Defendant additionally argues that the Government breached ¶8 of his plea agreement by failing to file a motion for downward departure pursuant to U.S.S.C. 5K1.1.

**II. Analysis**

**A. Defendant's Waiver**

Defendant's plea agreement contains a written waiver of his right to appeal or to collaterally attack his plea, conviction or sentence. The waiver plainly states:

> 7. The Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution.

Doc. 27, ¶7.

Defendant's plea was accepted at a rearraignment held on December 27, 2007. At the court's request, the Assistant United States Attorney summarized the provisions of the agreement, including the relevant waiver:

> The defendant waives the right to appeal, the right to attack collaterally the guilty plea, conviction and sentence.

Doc. 54, TR of Rearraignment at 6. The defendant responded affirmatively when the court inquired if the prosecutor had correctly summarized the plea agreement. *Id*. at 7. The defendant's attorney has filed an affidavit confirming that he explained the waiver of appeal rights contained in the agreement to his client. Doc. 60-1, at ¶7.

After confirming that the prosecutor had correctly described the defendant's own understanding of the plea agreement including the waiver, the court also specifically discussed the waiver:

> THE COURT: Normally you would have the right to appeal that sentence that I imposed to the United States Court of Appeals for the Sixth Circuit.

**But in paragraph 7 of your plea agreement, you waive that right.**

...Finally if the sentence is more severe than you expected, you would still be bound by your plea and will have no right to withdraw it. Do you understand all that sir?

THE INTERPRETER[1] (on behalf of defendant): Yes.

*Id*. at 9 (emphasis added). The court carefully questioned the defendant before finding that his plea "is a knowing and voluntary plea supported by independent basis and fact containing each of the essential elements of the offense." *Id.* at 14.

The defendant's waiver is enforceable in this proceeding. Defendant's mere filing of the present §2255 motion violates his clear and unequivocal waiver of his right to collaterally attack his conviction or sentence.

The Sixth Circuit has repeatedly held that a defendant can waive his right to collaterally attack his conviction or sentence in a plea agreement, as long as the waiver is knowing, intelligent, and voluntary. *See e.g., United States v. McGilvery,* 403 F.3d 361, 363 (6th Cir. 2005); *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999). The transcript of the rearraignment proceedings confirm the knowing and voluntary nature of both the plea and the waiver in this case.

The waiver was discussed in open court and freely acknowledged by the defendant. *See* Doc. 54, TR at 5-7, 9. The presiding district judge determined that defendant had not only received a copy of the indictment, but also that he had reviewed the charges against him and had

---

[1]All court proceedings were conducted with the aid of a Spanish Interpreter. Defendant makes no claims relating to any language barrier, nor could he, given that his attorney spoke Spanish as well.

reviewed the plea agreement with his attorney. *Id*. at 5-6. Defendant specifically was advised of and acknowledged his understanding of the waiver. *Id.* at 6, 9.

Defendant received substantial benefits from entering into a plea agreement, including being permitted to plead guilty to a single charge and a three-level downward departure to defendant's base offense level due to his acceptance of responsibility. The United States dismissed additional charges. This court should not countenance defendant's attempt to violate his plea agreement. Instead, the defendant's §2255 motion should be denied and dismissed as barred by his enforceable waiver of his right to file such a motion.

**B. Challenges to the Waiver**

**1. Whether Defendant Was Informed of the Waiver**

In a supplemental memorandum in support of his motion to vacate [Doc. 57], the defendant first argues that his waiver should not be enforced because the trial court did not specifically discuss the waiver. Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure requires courts to inform a defendant of "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence."

Defendant's assertion is flatly contradicted by the record in this case. First, the Sixth Circuit has held that even where a district court does not specifically mention an appellate-waiver provision, "a prosecutor's summary of the key elements of the plea agreement can be sufficientt to prove that the defendant's waiver was knowing and voluntary." *United States v. Sharp*, 442 F.3d 946, 951 (6th Cir. 2006); *see also United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006)(a district court's failure to inquire specifically whether defendant understood the appellate-waiver provision does not render the provision invalid). In this case, the plea colloquy quoted above clearly demonstrates that the defendant was fully advised of the waiver in open

4

court. The defendant confirmed the accuracy of the prosecutor's description of the plea agreement, including the waiver provision, and the court reiterated that waiver of its own accord prior to accepting defendant's plea.

### 2. Whether the Waiver Encompasses the "Substantial Assistance" Issue

In his reply memorandum [Doc. 61], defendant next argues that the "cooperation issue" was "put outside of any waiver." Again, defendant's assertion is contradicted by the record in this case. The waiver as written is clear, unequivocal, and all-encompassing. *Contrast Nunez v. United States,* 546 F.3d 450 (7th Cir. 2008)(noting waiver that permitted appeal in the event that defendant's sentence exceeded the statutory maximum). On the facts presented, there were no "exceptions" carved out for an appeal in the event that the United States exercised its "sole discretion" not to file a substantial assistance motion. Moreover, the defendant was specifically advised by the prosecutor of that discretion.

> [AUSA]: The defendant will cooperate fully with the United States.
>
> And if he provides substantial assistance, we will ask the court to depart downward from the sentencing recommendations at the time of sentencing.
>
> The defendant understands that determination as to whether he has provided substantial assistance rests solely within the discretion of the United States.

Doc. 54 at 7. The defendant was further advised by the court that he would not be permitted to withdraw his plea regardless of the sentence imposed:

> THE COURT: Finally, if the sentence is more severe than you expected, you would still be bound by your plea and will ahve no right to withdraw it. Do you understand all that, sir?
>
> THE INTERPRETER [for defendant]: Yes.

Considering the record as a whole, including the all-encompassing nature of the waiver acknowledged by defendant in open court and the additional advice provided concerning the

5

discretion afforded to the prosecutor to determine "substantial assistance," there is no support for defendant's position that the issue of his cooperation was somehow exempted from the scope of the waiver.

### 3. Roe v. Flores-Ortega

Finally, the defendant argues that his waiver cannot be enforced in light of *Roe v. Flores-Ortega*, 528 U.S. 470 (2000) "and the requirement that even if a lawyer believes the requested appeal would be frivolous, he is bound to file a Notice of Appeal and submit a brief pursuant to *Anders vs. California*, 386 U.S. 738 (1967)." Doc. 55 at 7. Defendant argues that *Roe* applies even in cases where a defendant has knowingly and voluntarily waived his right to appeal - in other words, that a defendant may freely violate his own waiver by forcing counsel to file an *Anders* brief.

I disagree. First, under published Sixth Circuit case law, no exception to the validity of the defendant's waiver of his right to file a post-conviction motion exists, except where the claim itself narrowly attacks the validity of the waiver. *See Davila*, *supra*. This conclusion is a logical one because to permit any broader claims would be to eviscerate post-conviction waivers entirely. In other words, it is not enough for a defendant to claim that a waiver should not be enforced merely because his §2255 claim is based upon the "ineffective assistance of counsel." Virtually all cognizable claims brought pursuant to 28 U.S.C. §2255 *must* be based upon the ineffective assistance of counsel. Procedurally, a claim may not be raised in a §2255 motion if it could have been first presented on direct appeal. *See generally United States v. Frady*, 456 U.S. 152, 102 S. Ct. 1584 (1982). At the same time, a claim that has been litigated on direct appeal may not be relitigated in a §2255 proceeding. *See Wright v. United States*, 182 F.3d 458 (6th Cir. 1999). Only ineffective assistance of counsel claims, which cannot be first presented on direct

appeal, fall within these §2255 guideposts of justiciability.[2] Thus, a waiver of post-conviction collateral relief necessarily encompasses ineffective assistance of counsel claims as a general rule.

Assuming a valid waiver as I have found in this case, exceptions to its enforceability should be rare. Contrary to the defendant's argument, I do not believe that *Roe v. Flores-Ortega* renders a waiver unenforceable whenever a defendant changes his mind about complying with his end of the plea bargain, and demands an appeal. Nor should a waiver that is valid at the time of the defendant's plea agreement become invalid if a defendant later discovers that the waiver actually cost him the opportunity to bring a meritorious claim, as opposed to a frivolous one.

In *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029 (2000), the Supreme Court reiterated previous holdings that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal" is presumed to be constitutionally deficient. *Id.* at 476, 120 S.Ct. at 1035. In other words, where a defendant timely instructs his attorney to file a notice of appeal, characterized as a "purely *ministerial* task," counsel presumptively violates the Sixth Amendment if he or she fails to do so. *Id.* at 477 (italics added). When the defendant has not clearly conveyed his wishes one way or the other, the Supreme Court instructed trial courts considering counsel's performance under *Strickland* to first ask "whether counsel in fact consulted with the defendant about an appeal." *Id.* at 478, 120 S.Ct. at 1035.

The concern of the Supreme Court in *Roe v. Flores-Ortega* was to define the scope of counsel's constitutional duty to consult with his or her client about the right to appeal when a

---

[2]These general rules permit infrequently applied exceptions, such as a showing of "cause and prejudice" and/or actual innocence, which exceptions are well beyond the scope of this opinion.

7

defendant has not clearly instructed counsel to file an appeal. The Court declined to mandate a duty to consult in every criminal case, holding instead that such a duty exists only where a rational defendant would want to appeal (based upon the existence of nonfrivolous grounds for appeal), or where a particular defendant has demonstrated interest in appealing. *Id.* at 479, 120 S. Ct. at 1036. The Court suggested that in cases when the defendant pleads guilty, "the court must consider such factors as whether the defendant received the sentence bargained for...and whether the plea expressly reserved or waived some or all appeal rights," in order to determine whether a rational defendant would have desired an appeal or had demonstrated sufficient interest in an appeal. *Id.* Notably, the Court was not presented with and did *not* address the impact of a full waiver of appeal rights.

The facts of the instant case take it outside of *Roe v. Flores-Ortega,* because the defendant executed a voluntary waiver of his right to file the instant collateral proceeding, and a full waiver of appeal rights. That *Flores-Ortega* does not dictate the result is not only apparent from the central fact that no waiver was at issue in that case, but also can be inferred from the partial dissent of Justice Souter (joined by Justices Stevens and Ginsburg). Justice Souter wrote:

> [T]he crucial question in this case is whether, after a criminal conviction, a lawyer has a duty to consult with her client about the choice to appeal. The majority's conclusion is sometimes; mine is, almost always in those cases in which a plea of guilty *has not obviously waived any claims of error*.

*Id.* at 488, 120 S.Ct. at 1040-41 (emphasis added). In a related footnote, even the dissent suggested that no duty to consult would exist, for example, in cases in which appeal rights had been waived. *Id.* at n. 1)("of course, there is no claim here that Flores-Ortega waived his right to appeal as part of his plea agreement).

The question presented by this case is whether the *Flores-Ortega* presumptive prejudice standard applies when a defendant willingly accepts a plea after consultation with counsel which foregoes his right to appeal, but subsequently changes his mind. No published Sixth Circuit decision holds that *Roe v. Flores-Ortega* mandates that counsel file an appeal even if that defendant has no appealable issues and has expressly and fully and voluntarily waived all rights to appeal. Rather, unpublished case law from the Sixth Circuit, as well as two published cases from other circuits, supports the conclusion of this court that counsel need not file an *Anders* brief under such circumstances.

Arguably, such an appeal will be futile because the appellate court will dismiss on the basis of the waiver.[3] As the Seventh Circuit noted in a similar case:

> *Roe* concludes that failure to appeal is a form of not showing up for duty. But *Roe's* rationale presumes that the defendant has contested the charges; when a defendant not only pleads guilty but also waives the right to appeal, it is hard to classify the absence of appeal as the lawyer taking a vacation.
> ........
> Filing an appeal is not "ministerial" when the defendant has waived that entitlement. Waivers are enforced even if a defendant changes his mind. A defendant who waits past the time for appeal (10 days in federal court) before asking his lawyer to proceed cannot expect that this will be done as a "purely ministerial" task, for after 10 days there is no longer a right to appeal; likewise there is no longer a right to appeal following a waiver. Filing an appeal after a waiver is no more a "ministerial duty" than preparing for trial would be a lawyer's ministerial duty after the defendant pleads guilty.
>
> Instead of being obliged to follow his client's (latest) wishes, however unreasonable they may be, a lawyer has a duty to the judiciary to avoid frivolous litigation - and an appeal in the teeth of a valid waiver is frivolous. A lawyer also has a duty to his client to avoid taking steps that will cost the client the benefit of the plea bargain.

---

[3]Waivers in plea agreements are negotiated. Although it is significant that the waiver of both appeal and post-conviction proceedings in this case is unlimited, other waivers are less complete and permit appeal on limited grounds.

9

*Nunez v. United States,* 546 F.3d 450, 454-455 (7th Cir. 2008)(citation omitted). The Seventh Circuit concluded in that case that "[t]here is no point in a constitutional rule that would yield an exercise in futility." *Id.* at 456.

While the above analysis should end the matter, the defendant in this case correctly points out that this approach is -at present- a minority view. As post-*Flores-Ortega* case law first developed, seven Courts of Appeals held in published decisions (with varying amounts of discussion, enthusiasm and dismay) that the presumptive prejudice standard of *Flores-Ortega* cannot be rebutted even in the face of a valid waiver. In short, these courts suggested that - regardless of an express waiver of the right to appeal, the frivolousness of any grounds to appeal, and the risk to the defendant who may lose the benefit of his plea bargain - a failure to file an appeal **always** violates the Sixth Amendment. *See Campusano v. United States*, 442 F.3d 770, 772-77 (2d Cir. 2006); *United States v. Poindexter*, 492 F.3d 263 (4th Cir. 2007)(holding that attorney required to file notice of appeal even when contrary to plea agreement and harmful to client's interests); *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007); *Watson v. United States*, 493 F.3d 960 (8th Cir. 2007); *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1195-99 (9th Cir. 2005)(reading *Flores-Ortega* as requiring appeal upon request even when contrary to waiver in plea agreement and harmful to defendant, despite "troubling" result that is "contrary to common sense"); *United States v. Garrett*, 402 F.3d 1262, 1265-67 (10th Cir. 2005); *Gomez-Diaz v. United States*, 433 F.3d 788, 791-94 (11th Cir. 2005)(applying *Flores-Ortega* in case of *partial* waiver of appeal rights). Under this reasoning, counsel would have an obligation to file a notice of appeal in clear violation of the plea agreement, followed by an *Anders* brief, if the defendant requested he do so. It is this line of authority upon which defendant relies.

Although the Sixth Circuit Court of Appeals has not yet issued a published opinion, the Third Circuit Court of Appeals has joined the Seventh Circuit in retreating from such blind and rote adherence to the presumption announced in *Roe v. Flores-Ortega* in favor of a more nuanced approach. *See United States v. Mabry*, 536 F.3d 231 (3rd Cir. 2008). The approaches of the Third and Seventh Circuits are persuasive.

In *Mabry*, the court noted at the outset of its opinion that although the enforceability of the waiver "may seem straightforward, there is a body of case law in the courts of appeals - which, curiously, focuses not on the waiver but on the importance of the right to appeal - that complicates our analysis." *Id.* The *Mabry* court proceeded to thoughtfully explain its differences with the majority view. Without repeating that analysis entirely, suffice it to say that I agree that the approach of the majority view is -surprisingly- based upon flawed reasoning that ultimately fails to recognize both that *Flores-Ortega* announced a presumption and not an infallible rule, and that *Flores-Ortega* did not address whether that presumption would apply in a waiver case. *See id.,* 536 F.3d at 241 ("we believe that the other courts of appeals that have considered this issue have applied Flores-Ortega to a situation in which it simply does not 'fit'").

> [I]n the absence of a waiver, the filing of a notice of appeal is a purely ministerial task that could only help, not harm the defendant. [*Nunez v. United States* ("*Nunez* I"), 495 F.3d 544 (7th Cir. 2007), vacated on other grounds, 128 S. Ct. 2990 (2008)] ] at 547 (citing *Flores-Ortega*, 528 U.S. at 477, 120 S.Ct. 1029). By contrast, where there is a total appellate and collateral waiver, "counsel's duty to protect his or her client's interest militates against filing an appeal" which could cost the client the benefit of the plea bargain against his or her best interest. *Id.* at 548; *see also Sandoval-Lopez*, 409 F.3d at 1197 ("Sometimes demanding that one's lawyer appeal is like demanding that one's doctor perform surgery, when the surgery is risky and has an extremely low likelihood of improving the patient's condition.").FN9 Thus, there is no reason to presume prejudice amounting to a miscarriage of justice in such a situation where the attorney's filing of an appeal would constitute a violation of the plea agreement, relieving the government of its obligations as well.

> FN9. Even those courts that have applied Flores-Ortega in the waiver context have noted that presuming prejudice where there is a waiver makes little sense, because "most successful § 2255 movants in the appeal waiver situation obtain little more than an opportunity to lose at a later date." *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir.2007); *accord Campusano*, 442 F.3d at 777 ("Admittedly, applying the Flores-Ortega presumption to post-waiver situations will bestow on most defendants nothing more than an opportunity to lose."). So doing, they reach results that are admittedly "contrary to common sense." *See Sandoval-Lopez*, 409 F.3d at 1196.

*Id.*; *see also Kearney v. United States*, 2006 WL 1784349 (D.N.J. 2006); *Serrano v. United States*, 2005 WL 2129922 (D.N.J. 2005).

Although a lone unpublished decision within the Sixth Circuit seemed to apply *Flores-Ortega* in the face of a clear waiver, *see Carrion v. United States*, 107 Fed. Appx. 545, 547 (6th Cir. 2004), a more recent decision embraced *Mabry*'s well-reasoned approach. *See Wright v. United States*, 320 Fed App'x 421, 2009 WL 937702 (6th Cir. April 8, 2009). Several district courts within the Sixth Circuit, including this one, have obtained the same result. *See, e.g.*, *United States v. McCormick*, 2008 WL 5110574 (E.D. Mich. Dec. 2, 2008); *United States v. Walls*, Covington Crim. Action No. 05-92-WOB-JGW (Doc. 79, Report and Recommendation of 3/13/08 adopted on 4/4/08); *see also U.S. v. Taylor*, London Crim. Action No. 6:07-12-DCR, 2008 WL 482873 (Nov. 5, 2008).

Thus, mindful that I go against the weight of published opinions of seven circuit courts of appeal, but confident that the minority published view of two circuits and the unpublished Sixth Circuit case has it right, I hold that a complete waiver of appeal rights removes this case from the scope of *Flores-Ortega*. Alternatively, I would hold that the presumption of prejudice in *Flores-Ortega* is rebutted in this case by the existence of a valid waiver of appeal rights.

### C. Affidavit of Counsel That Defendant Did Not Wish To Appeal

Based upon my conclusions that: 1) the defendant's valid waiver of his right to file a collateral post-conviction motion bars this proceeding; and 2) the defendant's valid waiver of his right to appeal dooms his underlying ineffective assistance of counsel claim, defendant's motion to vacate must be denied as a matter of law. But even if a reviewing court were to ignore the waiver and hold that *Flores-Ortega* applies, I would recommend denial of defendant's §2255 motion.

Counsel's affidavit states that the defendant agreed not to file an appeal by virtue of the plea agreement, that the defendant concurred that the plea agreement including the waiver was "the best of a bad set of options," and that the defendant never requested an appeal. Doc. 60, Exhibit 1. However, defendant has filed an affidavit that states that on an **unspecified date** after sentencing, "I told my wife to call the attorney and to tell him that I wanted to appeal the fact that I did not receive the Section 5K1.1. and Section 3553(e) departure," and that he also (again, on an **unspecified date**) "told counsel to appeal but he stated that I had waived my appeal rights." Doc. 55-4, ¶¶9-10. The lack of specificity dooms the defendant's representations even if they were credible - which they are not. By failing to indicate the date on which he allegedly communicated his desire to appeal, the defendant leaves open the possibility that any alleged requests to appeal were not made until the time for filing an appeal had expired, at which point counsel had no duty even under the presumption of *Roe v. Flores-Ortega*. Regarding his allegation that counsel told the defendant that he had waived his appeal, the defendant fails to allege that he persisted in his request, leaving open the construction that he and his attorney discussed appeal, but that he did not persist in his inquiry after counsel explained the waiver.

The general and ambiguous nature of the defendant's allegations is easily contrasted with the specificity of counsel's affidavit. Although in some cases an evidentiary hearing might be required to resolve the competing representations, in this instance I conclude that no hearing is required.

Defense counsel's affidavit is extremely detailed:

> 11. In his Motion and accompanying Affidavit, Mr. Arevalo also alleges that he asked his wife to call me in order to file an appeal. He further alleges that on numerous occasions I told his wife that Mr. Arevalo could file the appeal himself when he arrived at the prison. Further, Mr. Arevalo states that he personally instructed me to file an appeal, but that I replied that he had waived his appeal rights.
>
> 12. Every single one of Mr. Arevalo's allegations is false. I was in frequent contact with Mr. Arevalo and his family immediately before and after his sentencing. At no point did Mr. Arevalo or any member of his family instruct me to file an appeal and I had no reasonable expectation that he wanted to appeal.
>
> On or around March 21, 2007, I was in contact with Mr. Arevalo's family, including his wife (Luisa Ramos), regarding the letters filed on his behalf [by counsel]. Following Mr. Arevalo's sentencing, I continued to work with Mr. Arevalo and his family in the hope of convincing the government to move for a sentence reduction. At no point during this time (including the meetings with his sister, Araceli Arevalo-Rosales, and his brother-in-law, omar, on March 19, 2008 and March 25, 2008; and an additional meeting with Mr. Arevalo and Mr. Batista on April 9, 2008) did Mr. Arevalo or anyone else in his family request that I file an appeal on his behalf. Luis Ramos never called my office on "numerous occasions" to tell me Mr. Arevalo wanted to appeal. As these calls never occurred, I never told Mrs. Ramos that Mr. Arevalo could "do it himself" when he arrived at the prison.
>
> 13. Mr. Rothrock and I found no non-frivolous grounds for appealing Mr. Arevalo's sentence. Further, by virtue of signing the plea agreement, including its appeal provisions (all of which had been explained to him in detail by myself with the assistance of an interpreter), Mr. Arevalo intelligently waived his rights to appeal. There was no reasonable basis for Mr. Rothrock or myself to know that Mr. Arevalo sought an appeal.
>
> 14. Mr. Rothrock and I worked tirelessly to obtain the best result possible for Mr. Arevalo, both before and after his sentencing hearing. Our efforts included numerous debriefings as well as attempts to find a DEA informant for Mr.

> Arevalo's benefit. None of these efforts were successful. Following the
> explanation of the plea agreement and its appeal provisions, neither Mr. Arevalo
> nor his family indicated that he sought an appeal. Mr. Rothrock and I simply had
> no reasonable expectation that Mr. Arevalo wanted to appeal.

Affidavit at ¶¶11-14.

Merely because the defendant allegedly instructed his wife to contact counsel, or that he alleges that she contacted counsel on unspecified dates, does not mean that she did, particularly in light of counsel's representations that she did not. The defendant does not address counsel's affidavit in his reply memorandum, other than to argue that counsel's statements that he tried to persuade the Government to move for a sentence reduction proves that the defendant was deserving of that reduction. The defendant's wife has not filed an affidavit. Thus, it is permissible for this court to accept counsel's sworn affidavit that he received no calls from defendant or defendant's wife requesting an appeal.

Where counsel receives no actual notice that the defendant wishes to appeal, and where counsel was aware of the defendant's express and complete waiver of *all* appeal rights, the defendant's desire to plead guilty, and the lack of any non-frivolous grounds for appeal, it was not *Strickland* error for counsel to fail to consult with his client concerning an appeal. immediately following the entry of judgment. On the facts presented, counsel did not violate *Flores-Ortega* by failing to advise the defendant concerning his appeal rights post-judgment, because no rational defendant would have desired an appeal *Accord Parsons v. United States*, 505 F.3d 797 (8th Cir. 2007)(affirming denial of *Flores-Ortega* claim in light of credible testimony by counsel that he did not hear defendant's oral request to appeal, in light of waiver of appeal rights in guilty plea).

Other courts have agreed on similar facts that a trial court reviewing a §2255 motion is not required to conduct an evidentiary hearing. *Cummings v. United States*, 84 Fed. Appx. 603, 605, 2003 WL 23140049 (6th Cir. 2003)(affirming denial of §2255 motion where district court credited trial counsel's affidavit stating that defendant had not asked him to file appeal); *Garner v. United States*, 2006 WL 2585066 (E.D. Tenn. 2006)(unpublished, affirming denial of §2255 motion, crediting counsel's affidavits that defendant did not request appeal over contrary illogical statement of defendant that he requested appeal); *Odom v. United States*, 229 F.3d 1153 (Table text available at 2000 WL 1175598) (6th Cir. 2000); *Houston v. United States*, 2006 WL 13213 (E.D. Tenn. 2006)(unpublished, crediting counsel's affidavit). A petitioner's self-serving statements in an affidavit that are contradicted by a credible version of events in an affidavit from his trial counsel may be incredible as a matter of law. *See e.g.*, *Gibson v. United States*, 2007 WL 210417 No. CV-06-5740 at *4 (E.D.N.Y. Jan. 25, 2007).

**D. Frivolousness of Appeal**

The frivolousness of any appeal has been previously discussed in the context of the applicable waiver, but to the extent that a reviewing court were to disagree with the undersigned and apply the *Roe v. Flores-Ortega* presumption, it is worth noting that any appeal would have been frivolous as a matter of law. The sole claim that defendant alleges he wished to present on appeal - a claim for which he also seeks review in this collateral proceeding - is that the United States allegedly breached the plea agreement and/or that his attorney was ineffective for failing to argue that the United States had breached the agreement. Defendant argues that he provided substantial assistance to the Government as required by ¶8 of his plea agreement, but that the Government failed to make a 5K1.1 motion for a downward departure in return for his cooperation.

Paragraph 8 of the plea agreement provides that the "determination as to whether the Defendant provided substantial assistance is solely within the discretion of the United States. Doc. 45, ¶8.

This provision of the Plea Agreement was discussed in open court:

A.U.S.A. WEST: The defendant will cooperate fully with the United States.

> And if he provides substantial assistance, we will ask the court to depart downward from the sentencing recommendations at the time of sentencing.
>
> The defendant understands that determination as to whether he has provided substantial assistance rests solely within the discretion of the United States.

Doc. 27.

In addition to the express terms of the plea agreement, verified by defendant in open court, defense counsel's affidavit states that he "stressed repeatedly" that there was no guarantee of a substantial assistance motion and that the determination would be made solely and exclusively by the United States. In fact, the likelihood of the United States making such a motion was drawn into question by defendant's own conduct in failing to be completely truthful at a prior meeting with the prosecution.

> 7. On December 22, 2007, I met with Mr. Arevalo regarding the plea agreement proposed by Mr. West. Teresa Thorpe, a U.S. and Kentucky-certified interpreter, interpreted as I spoke to Mr. Arevalo in English and he spoke in Spanish. With Mrs. Thorpe's assistance, I carefully reviewed the entire text of the proposed plea agreement with Mr. Arevalo. I stressed repeatedly that, given the failure of the December 3rd meeting [at which defendant failed to disclose key information], there was no guarantee that the U.S. Attorney would seek a sentence reduction, even with the better information that we recently had provided. This same point had been made by [co-counsel] Mr. Rothrock and myself previously. ....

Doc. 60-1. Counsel's affidavit further indicates that he arranged a second debriefing with the United States shortly before sentencing on March 18, 2008, but that unfortunately, "the co-

Defendant, Mr. Silva, as well as other informants, had already provided the same information." *Id.* at ¶8.

It is clear from the written plea agreement that the decision as to whether defendant would receive a motion for downward departure rested solely within the discretion of the United States. Doc. 54, TR at 7; *Affidavit of John Goodman* at ¶10. Despite defendant's attempt to cooperate, no motion for departure was made because the information provided was "too little and too late." Where the government retains sole discretion in filing a substantial assistance motion, its decision not to file such a motion may be reviewed only for unconstitutional motives. *United States v. Igbinovia*, 71 Fed. Appx 472, 474 (6th Cir. 2003)(*citing United States v. Moore*, 225 F.3d 637, 641 (6th Cir. 2000)). The defendant freely concedes that although he accuses the United States of general "bad faith," he "has not claimed unconstitutional motives." Doc. 61 at 2. Thus, the sole claim that defendant sought to present on appeal was patently frivolous.

### III. Recommendation

For the reasons discussed herein, **IT IS RECOMMENDED** that the Defendant's motion to vacate his sentence in Lexington Criminal Action No. 07-153-JMH-JGW, Lexington Civil Action No. 09-7071-JMH-JGW [Doc. 55] be **denied** and dismissed from the active docket.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *see also United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly

drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are sufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

This the 24th day of May, 2010.

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge